No. 19,266.

J. P. RANDOLPH, *Appellee,* v. G. C. KENSLER, as Chief of Police, etc., et al., *Appellants.*

SYLLABUS BY THE COURT.

POLICE OFFICERS — *"Raiding" Suspected Premises — Injunction Disallowed.* The pleadings and evidence held not to authorize an injunction regulating the conduct of police officers with respect to a rooming house.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 10, 1915. Reversed.

*Earl Blake,* and *Robert C. Foulston,* both of Wichita, for the appellants.

*S. B. Amidon, D. M. Dale, Jean Madalene,* and *S. A. Buckland,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: J. P. Randolph, the keeper of a rooming house in Wichita, filed a petition alleging that certain police officers had upon three occasions "raided" his premises without lawful authority, causing a loss of patronage; and that if the acts were continued they would destroy his business. He asked an injunction

against further interference by the police.   This was granted, and the defendants appeal.

The defendants invoke the rule that in order to obtain an injunction one must plead as well as prove that some wrongful act is threatened, and is likely to be perpetrated unless enjoined.   Here the petition is defective in this regard.   It recites the commission of illegal acts in the past, but does not allege that they are likely to be repeated.   Nor was any direct evidence given of a purpose on the part of the officers to make any further visits to the plaintiff's place.   But the evidence that three visits had been made may have justified an inference that others were intended, especially as the defendants moved to discharge a temporary injunction on the ground that its continuance would work private and public mischief.   The petition was not attacked by motion or demurrer, and it could doubtless be regarded as amended, if no other objection to the judgment were found to be tenable.

The plaintiff testified in substance that each time that the officers came to his house he complained that they were injuring his business, but told them they could go through the place.   The defendants maintain that having given this permission he can not make the acts done in pursuance of it the basis for an injunction. The evidence doubtless justified a finding that the plaintiff suffered the house to be searched, but under a protest, and in deference to the official character of the defendants.   Injunctions have been sustained against continuing trespasses by policemen under color of their office.   (Note, 5 Ann. Cas. 483; Note, Ann. Cas. 1913 B, 713.)   Most of the cases of that character appear to have originated in the city of New York, and relatively few of them were carried to the court of last resort. In an opinion which has been often cited and sometimes criticized the New York court of appeals said, in reversing a judgment enjoining policemen from illegally

interfering with the conduct of a place where liquor was sold:

· "If equity will not intervene in behalf of a concededly lawful business of a fixed and unchanging character, to prevent the criminal prosecution of some alleged unlawful act in its conduct, how can such intervention be justified in a case where the business itself, even when lawfully conducted, exists by mere sufferance of law, or where it is of such a character that it may be lawful or unlawful at the will of him who conducts it? Such a situation as is presented in the case at bar. is one which, in its very nature, cannot be adequately dealt with by a court of equity. What might be a trespass at cne instant of time may be a perfectly justifiable and necessary act at another." (*Delaney v. Flood*, 183· N. Y. 323, 329, 76 N. E. 209, 2 L. R. A., n. s., 678.)

A court of equity will naturally exercise great caution in placing a restraint upon officers of the law with respect to honest efforts to perform the duties laid upon them for the suppression of vice and crime, even although mistakes of procedure may have been made. The trial court can best judge of the motives of the persons concerned, but we do not gather that the decision was based upon a want of good faith on the part of the defendants. Nor does their conduct appear to have been without reasonable excuse. At the first visit a man and two women were arrested at about two o'clock in the morning in one of the plaintiff's rooms. A charge of occupying a room for lewd purposes was made against them in the police court. They were released on bonds, which were forfeited. At the second visit no arrest was made, but shortly afterwards a man and a married woman were arrested there on the complaint of her husband. At the third visit the officers had a warrant charging the maintaining of a liquor nuisance, and commanding a search of the premises. No. liquor was found, however, and no arrest was made. The judgment of the court was that all the defendants, including the chief of police, and their successors in

office be "perpetually enjoined from raiding the property known as No. 406 East Douglas Avenue in the City of Wichita, Kan., unless said officers shall see a misdemeanor being committed, or unless said officers shall see a felony being committed on said premises, or unless said officers shall be in close pursuit of such person who shall have, prior thereto, committed a felony and shall have taken refuge, or have attempted to take refuge in said premises, and unless said officers shall have a warrant, duly issued by some court of competent jurisdiction for the search and seizure of said premises, or for the arrest of some party in said premises, and said officers and their successors and each and all of them are hereby perpetually enjoined from raiding said premises or searching the same without a proper warrant, or unless in pursuit of persons as hereinbefore set forth."

Doubtless the word "raiding" is used in the sense of entering for the purpose of making arrests. No question of an entrance by physical force is involved. The language quoted seems to define the conditions under which arrests may be made, and the definition is too restrictive. The action of the officers is forbidden unless they have seen an offense committed, *or* are in close pursuit of one who has committed a felony, *and* unless they have a warrant, apparently requiring the occurrence of the warrant with the circumstances which ordinarily dispense with it. The word "and" where italicized, however, may be inadvertent, or it may be used in the sense of "or." Regardless of this, the right to make an arrest for a felony, without a warrant, is unduly restricted, being limited to cases in which the offense was committed in the presence of the officers or where the offender had taken refuge in the premises from their close pursuit. An officer may arrest without a warrant one whom there is probable ground to believe guilty of a felony (*Railway Co. v. Hindsdell,* 76 Kan. 74, 90 Pac. 800; 3 Cyc. 878; 5 Enc. L. & P. 461;

Note, 84 Am. St. Rep. 682), and may effect a forcible entrance for the purpose (3 Cyc. 893). The judgment rendered can not stand in any event, and this court is of the opinion, in view of all the matters stated, that the case is not one in which an injunction should be granted.

The judgment is reversed and the cause remanded with directions to render judgment for the defendants.